IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS P. HEALY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-450 |
| | ) | |
| UNITED STEEL, PAPER AND FORESTRY RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKER INTERNATIONAL UNION, AFL-CIO-CLC, *et al.*, | ) ) ) ) ) ) ) | Judge Cathy Bissoon |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

For the reasons that follow, Defendants' Motions (Docs. 35, 39 & 41) for summary judgment will be granted.

Plaintiff is a current employee of Defendant Fluor ("Employer," or "the Company") who is dissatisfied with the Union Defendants' (collectively, "the Union's") handling of a grievance. The grievance stemmed from Plaintiff's safety violation in December 2019, followed by his termination for not complying with a directive, announced at a meeting on January 20, 2020, to remain out of Employer's secure worksite pending a three-day suspension. Plaintiff reentered the secure location to speak with his wife (also an employee of the Company), and to register complaint(s) with the Company's "Ethics Department." *See* Doc. 48 at 22.

Plaintiff contends that he was given permission to re-enter, although other attendees of the January 20th meeting directly refute his account. *See* Doc. 52 at ¶ 17.[1]

The Union prosecuted Plaintiff's grievance, and before a scheduled arbitration, negotiated a settlement with the Company. Plaintiff was demoted to his current position, and the Union engaged in follow-up negotiations, ultimately securing Plaintiff's seniority rights, as related to pension and vacation credits. *See* Doc. 40 at 14 (citing record evidence). Nevertheless, Plaintiff remains dissatisfied.

Defendants' counsel have laid out the relevant legal standards, accompanied by citations to binding legal authority. Rather than rely on counsel's recitations, the Court will follow the well-supported summaries in District Judge Susan Paradise Baxter's decision in Starcher v. Ameridrives Int'l, 2019 WL 4738124 (W.D. Pa. Sept. 27, 2019). To show that the Union breached its duty of fair representation, Plaintiff must establish that its actions were arbitrary, discriminatory or taken in bad faith. *Id.* at *5 (citation to binding authority, here and below, omitted).

Plaintiff has leveled no meaningful allegations of discriminatory animus. As for bad faith, the central premise in his most recent Complaint – that the Union harbored ill will because "he had made direct appeals to the . . . Union's Ethics Committee"[2] – has proven inaccurate.

---

[1] Although the Court reads the evidence in a light most favorable to Plaintiff, his own submissions appear to confirm Defendants' assertion that he went back to "vent" regarding perceived mistreatment. *Compare* Doc. 52 at ¶ 16 (affirmatively citing evidence that Company and Union representatives "did not feel [Plaintiff] was acting [in a] physically threatening [manner,] but were concerned about [his] behavior due to the life changing effects" of a last chance agreement ("LCA") presented at the meeting; and citing "mitigating circumstances [that] contributed to some of [Plaintiff's] emotions that played out") *with* Doc. 37 at 3 and Doc. 40 at 7-8 (summarizing evidence that Plaintiff reentered the secure site to express disagreement with his suspension).

[2] *See* 2d Am. Compl. (Doc. 28) at ¶ 28.

Although Plaintiff now emphasizes that he contacted the *Company's* ethics department, this fails to create a reasonable inference that such complaints caused the Union to have "improper motive"; or that its actions coincided with "substantial evidence of fraud, deceitful action or dishonest conduct." *See* Starcher at *6.

Similarly, Plaintiff cannot establish that the Union's purported "lying" to him regarding the grievance process presents a triable issue. *See* Doc. 46 at 25-26 (claiming that Union representatives "either ignored him, or (apparently) told him what they believed he wanted to hear until, at the very last possible minute, they presented him with [the LCA] as a *fait accompli*"). That the Union "lied" is a characterization of the evidence to which, the summary judgment standards notwithstanding, Plaintiff is not entitled. Plaintiff has *not* presented "substantial evidence" of fraud, deceitful action or dishonest conduct, let alone a whiff of evidence reflecting the requisite level of scienter.

That leaves Plaintiff with the theory that the Union's handling of his grievance was "arbitrary." This is a high hurdle, and it requires a showing of conduct "so far outside a wide range of reasonableness as to be irrational." Starcher at *5. A union has broad discretion in deciding whether and how to pursue an employee's grievance, and showings of negligence or poor judgment are not enough. *Id.*

Plaintiff falls well short of the mark. Having reviewed all the evidence, the Court sees nothing more than disagreement, on the part of Plaintiff and his counsel, regarding the weight of the evidence in support of his grievance. As recounted in Defendants' briefing, there existed substantial evidence that Plaintiff was advised not to return to the secure job-cite after the January 20th meeting. To the extent that any of Defendants' agents acknowledged Plaintiff's desire to speak with his wife (who was on the job-site), this does not mean that they understood

3

and acquiesced in his intention to reenter.  As Defendants highlight, Plaintiff could have been understood to mean that he intended to speak to his wife *at home* (or by telephone, or in any place other than the secure job-site) before deciding how to respond to the LCA.  The Court also finds compelling Defendants' evidence that, during the January 20th meeting, Plaintiff took "his lunch and everything" out to his car, because he "was concerned that [he] was going to be sent home."  *See* Doc. 44-1 at ECF banner pgs. 42 through 44 of 98 (Plaintiff's deposition testimony).  Similarly, it is undisputed that Plaintiff had to turn in his thermoluminescent dosimeter, used to measure employees' radiation exposure at work, before leaving the meeting.  *See* Doc. 40 at 7 (citing record evidence).  And although Plaintiff was not required to tender his security badge, this was specifically contemplated and discussed at the meeting – and the Company advised that this was unnecessary, given the short duration of Plaintiff's suspension.  *Id.*

Under the circumstances, the suggestion that the Union acted arbitrarily in negotiating Plaintiff's grievance (and ultimately allowing him to retain employment) is untenable.  The fuller explanations in Defendants' briefing are persuasive, and they are incorporated by reference.  Plaintiff has failed to establish a genuine issue of material fact regarding the duty of fair representation, and this likewise negates his claim against the Company.  *See* Starcher at *7.

Consistent with the foregoing, the Court enters the following:

## II.  ORDER

Defendants' Motions (**Docs. 35, 39 & 41**) Summary Judgment are **GRANTED**.

IT IS SO ORDERED.

October 14, 2022　　　　　　　　　　　　　　　　　s\Cathy Bissoon
　　　　　　　　　　　　　　　　　　　　　　　　　Cathy Bissoon
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

cc (via ECF email notification):

All Counsel of Record